UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

MICHAEL ANGELO SAGGIOMO,

       Plaintiff,

  v.

J. AMBROGI FOOD DISTRIBUTION, INC.,

       Defendant.

No. 1:21-cv-11315

**OPINION**

---

**APPEARANCES**:

Andrew J. Schreiber
Michael P. Murphy
MURPHY LAW GROUP, LLC
Eight Penn Center, Suite 2000
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103

    *On behalf of Plaintiff.*

Sheryl L. Brown
SIANA LAW LLP
941 Pottstown Pike, Suite 200
Chester Springs, PA 19425

    *On behalf of Defendant.*

**O'HEARN, District Judge.**

    This matter comes before the Court on Defendant J. Ambrogi Food Distribution, Inc.'s ("Defendant") Motion for Summary Judgment. (ECF No. 34). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, Defendant's Motion is **GRANTED**.

I.    BACKGROUND[1]

A. Relevant Parties

Defendant is a New Jersey corporation that distributes fresh produce to local customers including bars, restaurants, hotels, and schools. (Def.'s Stat. of Undisputed Mat. Facts ("SOMF"), ECF No. 33, ¶¶ 2–3). Plaintiff Michael Angelo Saggiomo ("Plaintiff") worked for Defendant from his hiring in December 2004 until his furlough and ultimate layoff in March and September 2020, respectively. (ECF No. 33, ¶¶ 14, 53, 61).

Defendant has been led since 2016 by Kristy Ambrogi, who succeeded her late husband as President of the business. (ECF No. 33, ¶¶ 4, 6). Plaintiff reported to Mrs. Ambrogi—either directly or indirectly through Vice President Rich Bastian—from November 2016 until his layoff. (ECF No. 33, ¶¶ 7, 18, 26).

Mr. Bastian joined Defendant as Vice President in October 2014 and assisted the Ambrogis in managing the company's day-to-day operations. (ECF No. 33, ¶¶ 7–9). Plaintiff reported to Mr. Bastian—in addition to Mrs. Ambrogi—"during Mr. Ambrogi's illness" before his death and until Plaintiff transitioned to the Facilities Manager role. (ECF No. 33, ¶¶ 17–18, 26). Mr. Bastian's employment with Defendant ended in February 2020. (ECF No. 33, ¶ 12).

B. Plaintiff's Employment

Plaintiff originally joined Defendant as its Director of Operations or General Manager,[2] and was responsible for overseeing Defendant's warehouse operations, including shipping and

---

[1] The facts set forth herein related to this Motion are undisputed unless otherwise noted. To the extent facts remain in dispute, the Court finds that they are immaterial to its legal analysis.

[2] Plaintiff maintains that his actual title from December 2004 through December 2017 was Director of Operations but admits that "Director of Operations and General Manager were used interchangeably." (Pla.'s Resp. to Def.'s SOMF, ECF No. 37-3, ¶ 14). The Court finds this dispute—if it can be called that—immaterial.

2

receiving; purchasing materials and tools; and handling personnel matters such as hiring, discipline, and union grievances. (ECF No. 33, ¶¶ 14–15). In December 2017, he transitioned[3] to the role of Facilities Manager, wherein he no longer handled receiving, production transportation, inventory, food safety, or union matters. (ECF No. 33, ¶¶ 19, 22, 24). Plaintiff's base salary remained the same after this transition, but his annual bonuses decreased significantly. (ECF No. 33, ¶ 27; Pla.'s Resp. to Def.'s SOMF, ECF No. 37-3, ¶ 14).[4]

### C. Plaintiff's Family Medical Leave

Plaintiff's wife is severely disabled, as certified by her doctor, and requires Plaintiff's custodial care, including assistance in eating, bathing, dressing, administering medication, and accompanying her to doctor's appointments as needed. (ECF No. 33, ¶¶ 31–33). In October 2019, Plaintiff requested intermittent family medical leave to attend to her needs, which Defendant approved in January 2020. (ECF No. 33, ¶¶ 30, 34). Plaintiff took such leave five times: on January 31, 2020; February 17, 2020; February 19, 2020; March 13, 2020; and March 16, 2020. (ECF No. 33, ¶ 35).

### D. Plaintiff's Allegations of Discrimination

Plaintiff asserts that throughout his employment with Defendant, Mrs. Ambrogi and Mr. Bastian subjected him to discrimination on the basis of his age, his wife's disability, and his need to take leave to care for her. (Pla.'s Supp. SOMF, ECF No. 37-2, ¶¶ 8–12, 14–15). Defendant categorically denies these allegations. (Def.'s Resp. to Pla.'s Supp. SOMF, ECF No. 39, ¶¶ 8–12,

---

[3] Plaintiff asserts he was "removed" from his original position and "given" the Facilities Manager role; Defendant insists that he was offered and voluntarily accepted the position change. (Def.'s SOMF, ECF No. 33, ¶¶ 21–22; Pla.'s Resp. to Def.'s SOMF, ECF No. 37-3, ¶ 27). The Court again finds this distinction immaterial.

[4] Defendant explains the change in Plaintiff's bonuses as the result of changes in business conditions, which Plaintiff disputes. (Def.'s Resp. to Pla.'s Supp. SOMF, ECF No. 39, ¶ 34). Again, the Court finds this dispute immaterial.

14–15).

Plaintiff alleges that Mr. Bastian made discriminatory comments about age towards Plaintiff and other senior employees in management positions. (ECF No. 37-2, ¶ 8). According to Plaintiff, Mr. Bastian stated to Plaintiff that he "wanted to build a young company for Kristy's son Michael, and he didn't want to hire anybody over the age of 40." (ECF No. 37-2, ¶ 9). He also alleges Mr. Bastian referred to Defendant's older employees as "dinosaurs." (ECF No. 37-2, ¶ 10). Plaintiff further alleges that Mr. Bastian excluded Plaintiff and four senior colleagues from their job duties and responsibilities beginning as early as 2016 because of their "age" and because they "were the old timers." (ECF No. 37-2, ¶¶ 16–20, 23–24). These employees felt their jobs were threatened and Plaintiff alleges that several were "pushed out" or "retired early" because of this discrimination. (ECF No. 37-2, ¶¶ 21, 25–26).

Plaintiff believes that Mrs. Ambrogi has "targeted" him due to his age and his wife's disability "[f]rom the day [she] came into office." (ECF No. 37-2, ¶ 14). Plaintiff cites his transition to Facilities Manager in 2017—on Mr. Bastian's advice—as an example of this targeting. (ECF No. 37-2, ¶¶ 27–28). Plaintiff asserts that Defendant effected this change so that a younger employee—Brian Stocklin—could be groomed to replace him. (ECF No. 37-2, ¶¶ 29–30).

Again, Defendant denies these allegations in their entirety. (Def.'s Resp. to Pla.'s Supp. SOMF, ECF No. 39, ¶¶ 8–12, 14–15, 19–30).

### E.  COVID-19 Pandemic & Defendant's Response

In response to the onset of the COVID-19 global pandemic, on March 9, 2020, the Governor of New Jersey, Phil Murphy, declared a public health emergency. (Def.'s SOMF, ECF No. 33, ¶ 36). Governor Murphy subsequently issued a series of Executive Orders requiring the shutdown of indoor dining at restaurants and bars, and directing all businesses to perform

4

operations remotely, or if impossible, to reduce on-site staff to the minimum number of employees necessary to carry out business operations. (ECF No. 33, ¶¶ 37–38). He later extended the effect of these Orders in June 2020. (ECF No. 33, ¶ 39).

Defendant suffered (and forecasted further) losses in business in light of the pandemic and the Governor's Orders. (ECF No. 33, ¶ 40; Exh. D, ECF No. 32-1 at 78:17–79:12).[5] In light of these losses, on March 17, 2020, Defendant began to impose a company-wide reduction in force. (ECF No. 33, ¶ 41). That day, Defendant laid off 108 employees, 70 of whom were under the age of 40. (ECF No. 33, ¶¶ 43–44). Another 16 employees followed on March 19, 2020, 8 of whom were under the age of 40. (ECF No. 33, ¶¶ 45–46). The next day, 5 more employees were laid off, 1 of whom was under the age of 40, and 1 employee—Plaintiff—was furloughed. (ECF No. 33, ¶¶ 47–48, 53). From March 22, 2020, through August 24, 2020, an additional 14 employees were laid off, 4 of whom were under the age of 40. (ECF No. 33, ¶¶ 49–50). In total, between March and September 2020, Defendant laid off 143 employees and furloughed 1 employee. (ECF No. 33, ¶ 51). Only 3 employees were rehired. (ECF No. 33, ¶ 52).

Among these layoffs, 120 employees were members of a union and were let go in order of seniority as required by their operative collective bargaining agreement. (Exh. D, ECF No. 32-1 at 27:1–20, 56:21–25). Non-union employees were laid off at Mrs. Ambrogi's discretion, which she exercised based on calculations of those employees' salaries and benefits, with the goal of retaining the fewest number of employees possible to maintain the business. (ECF No. 32-1 at 27:1–20,

---

[5] Plaintiff purports to dispute these facts but fails to cite any record evidence to contradict Defendant's assertion. These facts are thus deemed admitted. *See* L. Civ. R. 56.1(a) ("[A]ny material fact not [properly] disputed shall be deemed undisputed for purposes of the summary judgment motion.").

56:21–25).[6]

### F. Plaintiff's Layoff & Suit

After being furloughed on March 20, 2020, Plaintiff was laid off on September 25, 2020. (ECF No. 33, ¶¶ 53, 61). Both decisions were solely made by Mrs. Ambrogi. (ECF No. 33, ¶ 63). No new employee has taken Plaintiff's position of Facilities Manager; his responsibilities have been assumed by Mrs. Ambrogi and another employee. (ECF No. 33, ¶ 64). Defendant asserts that Mary Jo Nailor, who was 51 years old, split the responsibilities with Mrs. Ambrogi; Plaintiff insists that it has been Mr. Stocklin. (ECF No. 33, ¶¶ 64–65; Pla.'s Resp. to Def.'s SOMF, ECF No. 37-3, ¶¶ 64–65). Although Defendant began hiring again in 2021, no positions have been available in Plaintiff's area. (ECF No. 33, ¶¶ 70–72). He has not been rehired. (ECF No. 33, ¶ 72).

This suit followed. (Compl., ECF No. 1).

## II.   PROCEDURAL HISTORY

Plaintiff initiated this action on May 17, 2021, with the filing of his Complaint, alleging Defendant terminated his employment based on unlawful age and disability discrimination and in retaliation for taking protected family leave. (ECF No. 1). Specifically, Plaintiff's Complaint comprises four counts: (i) unlawful associational disability discrimination in violation of Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* ("Count I"); (ii) unlawful age discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J. STAT. ANN. § 10:5-1 *et seq.* ("Count II"); (iii) unlawful age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* ("Count III"); and (iv) retaliation in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et*

---

[6] Although neither party properly asserts these facts in their Statements of Undisputed Material Facts, (ECF Nos. 33, 37-3), they are supported by the record and appear undisputed based on the parties' briefing.

*seq.* ("Count IV").[7] (ECF No. 1). Defendant answered on July 19, 2021, and the parties proceeded to discovery. (ECF No. 9). After a series of extensions, discovery concluded on July 29, 2022. (ECF No. 30). The present Motion for Summary Judgment followed, (ECF No. 34), to which Plaintiff responded in opposition, (ECF No. 37), and Defendant replied in further support, (ECF No. 40).

### III.  LEGAL STANDARD

Courts may grant summary judgment when a case presents "no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists only when there is sufficient evidence for a reasonable jury to find for the non-moving party. *Young v. United States*, 152 F. Supp. 3d 337, 345 (D.N.J. 2015). When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 346 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the burden of establishing that no genuine issue of material fact remains. *Id.* A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *Id.* The nonmoving party, however, must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

---

[7] Plaintiff's Complaint expressly alleges that Defendant both "interfered with Plaintiff's rights under the FMLA," (ECF No. 1, ¶ 68), and "violated the FMLA by terminating Plaintiff from his employment in retaliation for his request and use of intermittent FMLA leave," (ECF No. 1, ¶ 69). Plaintiff makes clear in his briefing related to the present Motion that Defendant's only alleged "interference" with his FMLA rights was its retaliatory termination of his employment; he does not seek to proceed under a "denial of benefits" theory. (ECF No. 37-6 at 16 n.4).

7

## IV.   DISCUSSION

Defendant has moved for summary judgment on all remaining counts,[8] arguing that (a) Plaintiff's age discrimination claims under the NJLAD and ADEA fail because he cannot show that his age was a determinative factor in Defendant's decision to lay him off under the *McDonnell Douglas* burden-shifting framework; and (b) Plaintiff's FMLA claim also fails, regardless of whether the Court analyzes his claim on a mixed-motive or pretext theory. (ECF Nos. 34–35, 40). The Court agrees and grants Defendant's Motion.

### A. Plaintiff's Age Discrimination Claims Fail Under the *McDonnell Douglas* Burden-Shifting Framework.

"Age discrimination claims under the ADEA and [NJ]LAD are governed by the same standards and allocation of burdens of proof." *E.g.*, *Lawrence v. Nat'l Westminster Bank N.J.*, 98 F.3d 61, 65 (3d Cir. 1996). Claims under both statutes premised, as here,[9] on circumstantial rather than direct evidence, are analyzed using the familiar *McDonnell Douglas* burden-shifting framework. *Id.*; *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). That framework requires plaintiffs first to present a *prima facie* case establishing[10] that they were

---

[8] Plaintiff concedes his associational disability discrimination claim under the ADA. (Pla.'s Br., ECF No. 37-6 at 1 n.1). Accordingly, Defendant's Motion is granted to the extent it seeks summary judgment as to Count I. Only his ADEA, NJLAD, and FMLA claims—Counts II through IV—remain.

[9] Although Plaintiff suggests that certain alleged age-discriminatory statements made by a non-decisionmaker "amount to direct evidence of age discrimination," (Pla.'s Br., ECF No. 37-6 at 6; Def.'s SOMF, ECF No. 33, ¶ 60), that assertion is plainly incorrect, *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 n.2 (3d Cir. 2002) ("[C]ourts agree on what is *not* direct evidence—*e.g.*, statements by non-decisionmakers[.]"). Because Plaintiff does not rely on direct evidence, his claims are properly analyzed under the *McDonnell Douglas* test. *See, e.g., id.*

[10] The Court notes that "the prima facie case under the *McDonnell Douglas–Burdine* pretext framework is not intended to be onerous. The prima facie case merely 'raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" *Sempier v. Johnson & Higgins*, 45 F.3d 724, 728–29 (3d Cir. 1995) (citation omitted) (quoting *Furnco Constr. Co. v. Waters*, 438 U.S. 567, 577 (1978)).

(1) over the age of forty; (2) subject to an adverse employment action; (3) qualified for their position; and that (4) the adverse employment action was because of their age. *Fowler v. AT&T, Inc.*, 19 F.4th 292, 299 (3d Cir. 2021). If successful, the burden of production shifts to the employer-defendants to articulate legitimate, non-discriminatory reasons for their actions. *Id.* If such reasons exist, the plaintiffs can only overcome summary judgment by pointing to evidence "that could cause a jury 'either to (1) disbelieve the employer's articulated legitimate reasons, or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" *Id.* (quoting *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 668 (3d Cir. 1999) (internal alterations omitted)).[11]

Here, Defendant does not contest that Plaintiff was over the age of forty, subject to adverse employment action, and qualified for his position. (Def.'s Br., ECF No. 35 at 7; Exh. L, ECF No. 32-1). However, it argues that (i) Plaintiff cannot state a *prima facie* case for unlawful age discrimination because he cannot show it laid him off because of his age, and (ii) regardless, he cannot show its stated reason for laying him off is pretextual. The Court agrees.

### 1. Plaintiff's *Prima Facie* Case

Plaintiff's *prima facie* case is a weak one at best. The bulk of the evidence that forms the basis of his case is inadmissible, immaterial, or both.

To begin, Plaintiff argues at length that Mr. Bastian, Defendant's former Vice President, made age-discriminatory comments to him and others—allegedly calling older workers "dinosaurs" and suggesting that "he didn't want to hire anybody over the age of 40," (Pla.'s Br., ECF No. 37-6 at 6)—evidencing Defendant's impermissible consideration of age when it laid him

---

[11] To be clear, "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009).

9

off. To the extent that any of these statements—which include hearsay-within-hearsay not necessarily attributable to a party-opponent, *see* FED. R. EVID. 801(d)(2), 805—are admissible, it is not clear how material they are to the analysis of Plaintiff's claims. Plaintiff does not allege precisely when these statements were made. (Compl., ECF No. 1; Pla.'s Supp. SOMF, ECF No. 37-2, ¶¶ 8–12). More importantly, Mr. Bastian was not a decisionmaker with respect to Plaintiff's layoff, and indeed, he did not even work for Defendant at the time Plaintiff was furloughed and subsequently laid off. (Def.'s SOMF, ECF No. 33, ¶ 60). Plaintiff has set forth no evidence that Mr. Bastian had any role in the decision-making process that led to his eventual layoff or that Mrs. Ambrogi was aware of or endorsed such comments. Plaintiff is not asserting a hostile work environment claim. (Compl., ECF No. 1, ¶¶ 53–64). So, the fact that another former employee of Defendant allegedly made age-discriminatory comments in the past, though not wholly irrelevant, offers little, if any, insight into Defendant's reasons for laying off Plaintiff in September 2020. *See Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 521 (3d Cir. 1997) ("Although stray remarks by non-decisionmakers alone are insufficient to establish discriminatory intent, we have held that such remarks can still constitute evidence of the atmosphere in which the employment decision was carried out, and therefore can be relevant to the question of [discrimination].").

Beyond the statements allegedly made by Mr. Bastian, Plaintiff points to the fact that, beginning in 2016—four years before his layoff—Mrs. Ambrogi and Mr. Bastian "excluded" him and others "from their job duties and responsibilities," and removed him from his position while a younger employee was "being groomed to replace him." (Pla.'s Br., ECF No. 37-6 at 6–7).[12]

---

[12] Defendant disputes these facts, arguing that Plaintiff was offered and accepted this change in position, and that the idea that the younger employee was being groomed to replace Plaintiff was "simpl[e] speculation" on the part of one of Plaintiff's colleagues. (Def.'s SOMF, ECF No. 33, ¶ 60; Def.'s Resp. to Pla.'s Supp. SOMF, ECF No. 39, ¶ 29).

10

Plaintiff further asserts that the change in his role led to a "drastic[]" decrease in his annual bonus. (ECF No. 37-6 at 7). But again, the materiality of these assertions remains unclear. Plaintiff's claims are premised *only* on his alleged wrongful termination, (Compl., ECF No. 1, ¶¶ 53–64); he has *not* asserted a claim for any earlier adverse employment action, such as a reduction in pay or any other tangible alteration in compensation, terms, conditions, or privileges of employment. *See Jones v. SEPTA*, 796 F.3d 323, 326 (3d Cir. 2015). And rightly so, because any such claim would likely be barred by the relevant statutory deadlines and statutes of limitations. *See, e.g.*, *Griffin v. Dep't of Human Servs.*, No. 18-14697, 2019 WL 3369783, at *3–5 (D.N.J. July 26, 2019). Thus, there is little if any probative value in an alleged change in position that occurred several years before the relevant adverse job action. Although temporally remote, the Court accepts that these assertions, too, might "constitute evidence of the atmosphere in which the employment decision was carried out." *See Walden*, 126 F.3d at 521. Still, this evidence is not enough to raise the inference that it is more likely than not that Defendant based its decision to lay off Plaintiff on the consideration of impermissible factors. *See Sempier*, 45 F.3d at 728–29.

Finally, Plaintiff relies on authorities providing that in cases involving a reduction in force, such as here, (Def.'s SOMF, ECF No. 33, ¶ 42), the last prong of an age discrimination *prima facie* case may be satisfied by showing that an employer retained (or replaced an employee with) a sufficiently younger, similarly-situated employee. *Fowler*, 19 F.4th at 299 (citing *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 249–50 (3d Cir. 2002)); *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013). But once again, Plaintiff largely points to immaterial evidence in an effort to satisfy this standard. Indeed, Plaintiff spends a significant portion of his argument making the case that *several of his senior colleagues* were previously subjected to age discrimination. (Pla.'s Br.,

11

ECF No. 37-6 at 8–10).[13] Although this might help support his atmosphere-of-discrimination argument suggested above, it sheds little light on the reasons for *his* layoff in September 2020. *See Walden*, 126 F.3d at 521.

As to Plaintiff specifically, the parties disagree regarding whether and by whom Plaintiff was replaced. Plaintiff suggests that Mrs. Ambrogi and Mr. Stocklin took over his duties following his layoff. (Pla.'s Br., ECF No. 37-6 at 12–13). Defendant claims that those duties have been reassigned to Mrs. Ambrogi and Ms. Nailor, but that his former position remains unfilled. (Def.'s Br., ECF No. 35 at 13–14). Regardless, all three of these individuals are also members of Plaintiff's protected class, all being over the age of forty. (Def.'s SOMF, ECF No. 33, ¶ 65). And although Plaintiff rightly notes that some courts have suggested that individuals within the protected class—indeed, even those separated by merely five years in age—might still qualify as "sufficiently younger" to satisfy the *prima facie* case's fourth prong, the Court need not wade into that "legal quagmire." *Sams v. Pinnacle Treatment Ctrs., Inc.*, No. 18-09610, 2021 WL 2010570, at *4 (D.N.J. May 20, 2021).

The foregoing review of Plaintiff's largely "atmosphere[ic]" evidence demonstrates that his *prima facie* case is not the strongest. *See Walden*, 126 F.3d at 521. But mindful that his burden is "not intended to be onerous," *Sempier*, 45 F.3d at 728–29, the Court can assume (without necessarily deciding) that Plaintiff's showing is sufficient to state a *prima facie* case for age discrimination under the ADEA and NJLAD. It does so because regardless of whether he states

---

[13] To the extent this evidence is at all relevant, the Court notes that as to these employees, Plaintiff largely relies on deposition testimony demonstrating those employees' subjective beliefs regarding the end of their employment with Defendant. Such subjective beliefs held by other employees as to the employer's reason for the employment action taken against them is not material evidence. *See Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 646 (3d Cir. 2015) (holding that subjective belief that age discrimination occurred cannot support an inference of age discrimination for disparate treatment claim).

such a case, his claims cannot survive the pretext analysis that follows.

### 2. Pretext

Shifting the burden next to Defendant, it proffers a legitimate, nondiscriminatory reason for Plaintiff's layoff that is compelling: Plaintiff's layoff was part of a company-wide reduction in force necessitated by the onset of the COVID-19 global pandemic. (Def.'s Br., ECF No. 35 at 9; Def.'s SOMF, ECF No. 33, ¶ 41). This easily satisfies the "light" burden it carries "to articulate a legitimate, nondiscriminatory reason for" laying Plaintiff off. *See Sams*, 2021 WL 2010570, at *4 (quoting *Sgro v. Bloomberg L.P.*, 331 F. App'x 932, 937 (3d Cir. 2009)).

Plaintiff argues that this stated reason for his layoff is pretextual, and that Defendant was, in truth, motivated by his age. (Pla.'s Br., ECF No. 37-6 at 13–15). But Plaintiff must demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Defendant']s proffered legitimate reasons for its actions, such that a jury could disbelieve that it was the real reason behind the negative employment action." *Sams*, 2021 WL 2010570, at *5 (quoting *Hellman v. Am. Water Works Serv. Co., Inc.*, No. 17-12961, 2020 WL 2189967, at *6 (D.N.J. May 6, 2020)). Indeed, he must show that Defendant's proffered reason is "'so plainly wrong that it cannot have been the [its] real reason,' and that the only logical explanation is that [D]efendant was motivated by discrimination." *Id.* (quoting *Hellman*, 2020 WL 2189967, at *6). Given such a "rigorous" standard, no reasonable jury could come to that conclusion. *Dunleavy v. Montville Twp.*, No. 04-01154, 2005 WL 1917610, at *3 (D.N.J. Aug. 9, 2005), *aff'd*, 192 F. App'x 100 (3d Cir. 2006).

Although Plaintiff rightly notes, (ECF No. 37-6 at 13), that he is not required to produce evidence beyond his *prima facie* case to demonstrate pretext, *Simpson v. Kay Jewelers*, 142 F.3d 639, 644 (3d Cir. 1998), because his case is weak, *see supra* Section IV.A.1, it simply cannot, without more, stand up to Defendant's persuasive explanation for its employment decisions. Plaintiff was 1 of at least 144 of Defendant's employees laid off between March and September

13

2020 in the wake of a raging pandemic and Executive Orders from Governor Murphy directing employers to reduce on-site staff. (Def.'s SOMF, ECF No. 33, ¶¶ 36–39, 41, 51). And significantly, Plaintiff was not among the initial layoffs: the company furloughed him—the only furlough it implemented among its employees—from March until September, when it ultimately had to let him go. (ECF No. 33, ¶¶ 53–56, 61). That evidence belies Plaintiff's claim of age discrimination. Even more though, of the 143 other employees laid off, "61 were over the age of 40, while 82 were under the age of 40." (Def.'s Br., ECF No. 35 at 12; Exh. L, ECF No. 32-1).

Plaintiff attempts to refute these numbers and the fact that they undercut any claim of age discrimination by pointing out that 120 of the employees laid off were members of a union and employment decisions as to them were determined by seniority as directed by the operative collective bargaining agreement. (Pla.'s Br., ECF No. 37-6 at 15; Exh. D, ECF No. 32-1 at 57:3–7). However, even looking to the 23 non-union employees laid off, 12 were over the age of 40 while 11 were under the age of 40. (Def.'s Br., ECF No. 35 at 9; Exh. L, ECF No. 32-1). This evidence hardly gives rise to an inference of discrimination.

Defendant further explains that the employment decisions with respect to these non-union employees were made by Mrs. Ambrogi "based on calculations of the amount of salary/benefits which needed to be decreased based on Defendant's case count and the revenue." (Def.'s Br., ECF No. 35 at 9; Exh. D, ECF No. 32-1 at 27:1–20, 56:21–25). Plaintiff suggests that the real reason was that their titles included the word "manager." (Pla.'s Br., ECF No. 37-6 at 15). Setting aside that "manager" titles might be over-represented among the set of individuals not represented by the union and that managers might be more likely to command greater salaries and benefits that Defendant was seeking to cut, perhaps he is right. But this alone is insufficient to allow a jury "either to (1) disbelieve the employer's articulated legitimate reasons, or (2) believe that an

invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fowler*, 19 F.4th at 299 (quotation and internal alterations omitted). Plaintiff's age discrimination claims accordingly fail.

*****

For the foregoing reasons, Plaintiff's claims under the NJLAD and ADEA cannot survive analysis under the *McDonnell Douglas* burden-shifting framework: whether or not Plaintiff states a *prima facie* case, he cannot demonstrate that Defendant's proffered legitimate, non-discriminatory reason for laying him off was pretextual. Defendant is therefore entitled to summary judgment as to Counts II and III.

### B. Plaintiff's FMLA Claim Fails Under Either a Mixed-Motive or Pretext Theory.

To succeed on FMLA retaliation claims, plaintiffs must prove that they (1) invoked their right to FMLA-qualifying leave, (2) suffered adverse employment decisions, and (3) the adverse actions were causally related to their invocations of rights. *E.g.*, *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301–02 (3d Cir. 2012). Here, Defendant concedes that Plaintiff invoked his right to FMLA leave and suffered an adverse employment action. (Def.'s Br., ECF No. 35 at 15–17). Thus, the only remaining question is whether that action was causally related to his invocation of rights. The framework through which Plaintiff must make that showing, however, appears subject to some debate.

In proving causation, an FMLA retaliation plaintiff may proceed under either a (i) mixed-motive or (ii) pretext theory. *Egan v. Del. River Port Auth.*, 851 F.3d 263, 268 n.1, 274–75 (3d Cir. 2017) (citing 29 C.F.R. § 825.220(c)). Distinguishing the two, this Court recently explained—

> Under a pretext theory, a plaintiff asserts that "an employer's stated justification for an employment decision is false" and requires proof that "the exercise of a protected right was a determinative factor . . . such that in the absence of the . . . protected conduct, the adverse employment action would not have occurred."

15

> Under a mixed motive theory, a plaintiff claims "that an employment decision was based on both legitimate and illegitimate reasons," and requires proof "that exercise of FMLA rights was 'a negative factor' in the employer's employment decision."

*Dvoskin v. Bio-Reference Labs., Inc.*, No. 18-10667, 2021 WL 2134938, at *6 n.17 (D.N.J. May 26, 2021) (Arleo, J.) (citations omitted) (quoting *Egan*, 851 F.3d at 268 n.1).

Traditionally, plaintiffs asserting mixed-motive claims presented direct evidence of their employers' retaliation, and therefore, courts analyzed those claims under the so-called *Price Waterhouse* framework.[14] *See Lichtenstein*, 691 F.3d at 302 (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 276–77 (1989) (O'Connor, J., concurring)). Plaintiffs proceeding under the pretext theory, in contrast, typically relied on circumstantial evidence, and courts analyzed those claims under the *McDonnell Douglas* framework described above. *See id.*; *see supra* Section IV.A.

As the Third Circuit made clear in *Egan*, however, plaintiffs are "not required to produce direct evidence to receive a mixed-motive [jury] instruction" at trial. 851 F.3d at 275. This holding, coupled with the court's recognition that FMLA retaliation plaintiffs "do[] not need to prove that invoking FMLA rights was the sole or most important factor upon which the[ir] employer[s] acted," *id.* at 272 (quoting *Lichtenstein*, 691 F.3d at 301), might suggest that all mixed-motive cases, regardless of the type of evidence presented, should be analyzed under an updated version of the *Price Waterhouse* framework. This updated test would first require plaintiffs to show that the employer-defendants used their invocation of FMLA rights as a "negative factor" among "legitimate and illegitimate reasons" for their employment decision, and then, if successful, the

---

[14] As traditionally applied, "under the *Price Waterhouse* framework, when an FMLA plaintiff alleging unlawful termination presents direct evidence that his FMLA leave was a substantial factor in the decision to fire him, the burden of persuasion on the issue of causation shifts, and the employer must prove that it would have fired the plaintiff even if it had not considered the FMLA leave." *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 147 (3d Cir. 2004) (alterations and quotations omitted) (quoting *Fakete v. Aetna, Inc.*, 308 F.3d 335, 338 (3d Cir. 2002)).

employer-defendants would take on the burden to show that they would have made the decisions even if the plaintiffs had not invoked their rights. *See id.* at 275; *Conoshenti*, 364 F.3d at 147.

However, more recent decisions cast doubt on this conclusion. In an unreported case last year, *Laurora v. Bayer Corporation*, the Third Circuit's analysis suggested that the application of a *Price Waterhouse*-like or the *McDonnell Douglas* framework to FMLA retaliation claims still turned on whether the plaintiff relied on direct or circumstantial evidence. No. 21-02764, 2022 WL 4093738, at *3–5 (3d Cir. Sept. 7, 2022).

Plaintiff here asserts his FMLA retaliation claim under a mixed-motive theory (or under a pretext theory, alternatively)—which suggests that the updated *Price Waterhouse* framework applies—but relies on circumstantial evidence—which suggests his claim should be analyzed under the *McDonnell Douglas* framework. (Pla.'s Br., ECF No. 37-6 at 17). The Court need not answer the question of which framework applies definitively, however, because it concludes that Plaintiff cannot make the necessary showing to shift the burden to Defendant under either test.[15]

Taking the "more lenient" test first, *Beird v. Lincoln Univ. of Cmnwlth. Sys. of Higher Educ.*, 487 F. Supp. 3d 270, 279 n.3 (E.D. Pa. 2020), Plaintiff cannot show that Defendant used his invocation of his FMLA rights as a negative factor in its decision to lay him off. "Causation can be established through [(1)] an unduly suggestive temporal proximity, [(2)] a pattern of antagonism coupled with timing, or [(3)] other evidence sufficient to raise an inference of causation." *Dvoskin*, 2021 WL 2134938, at *6 (quotations omitted) (quoting *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014) and *Lichtenstein*, 691 F.3d at 307). Plaintiff establishes none here.

---

[15] Until the Third Circuit provides additional, clearer guidance as to the applicable standard in cases such as this, courts will have to determine which framework to apply or analyze plaintiffs' claims under both frameworks alternatively.

17

*First*, as to temporal proximity, Plaintiff argues that the proximity of his final time taking FMLA leave to his furlough—a mere four days—is unusually suggestive of Defendant's retaliatory motive. (Pla.'s Br., ECF No. 37-6 at 18–19; Def.'s SOMF, ECF No. 33, ¶ 35). But Plaintiff's *furlough* is not the relevant adverse action for his claim; he only alleges that his *termination* was retaliatory in violation of the FMLA.[16] (Compl., ECF No. 1, ¶¶ 65–72). His termination occurred several months after his last invocation of his FMLA rights. (Def.'s SOMF, ECF No. 33, ¶¶ 35, 61). Although "there is no bright line rule as to what constitutes unduly suggestive temporal proximity, courts in this and other Circuits have found temporal proximity ranging from two days to three weeks sufficient . . . for establishing causation," *Innella v. Lenape Valley Found.*, 152 F. Supp. 3d 445, 458 (E.D. Pa. 2015) (quotations and citations omitted), but two months insufficiently proximate, *e.g.*, *Colonna v. UPMC Hamot*, No. 16-00053, 2017 WL 4235937, at *8 (W.D. Pa. Sept. 25, 2017). The passage of over six months between Plaintiff's invocation of his FMLA rights and his layoff, on the other hand, could hardly support an inference of retaliation. *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) ("[A] gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment."); *Andreoli v. Gates*, 482 F.3d 641, 650 (3d Cir. 2007) (holding five-month time period between employee's complaint and first adverse action was, without more, insufficient); *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citing favorably lower court case rejecting causation inference where relevant events occurred three months apart).

---

[16] It is not hard to understand why Plaintiff does not allege that his furlough was a retaliatory adverse action: he was the only employee furloughed between March and September 2020. (Def.'s SOMF, ECF No. 33, ¶ 54). The rest of his colleagues affected by Defendant's reduction in force were terminated immediately. (ECF No. 33, ¶ 41–51). Thus, Plaintiff was treated *more favorably* than these colleagues.

18

*Next*, as to a pattern of antagonism coupled with timing, Plaintiff suggests that he "was subjected to direct discriminatory comments related to his wife's disability and the need to take protected FMLA leave in connection thereto," (Pla.'s Br., ECF No. 37-6 at 17), but this evidence is neither direct nor material. He points to allegedly discriminatory comments made by Mr. Bastian, but as discussed above, Mr. Bastian was not employed by Defendant at the time of Plaintiff's termination and there is no evidence that he was a decisionmaker with respect to Plaintiff's layoff. *See supra* Section IV.A.1. He also suggests that Mrs. Ambrogi "targeted" him on the basis of his wife's disability—which, it should be noted, of course, is distinct from his taking FMLA leave—but cites only his own deposition testimony describing his own subjective beliefs on the matter. (ECF No. 37-6 at 18; Exh. 5, ECF No. 37-5 at 31:15–32:20). Although Plaintiff is correct that deposition testimony may be sufficient evidence to survive summary judgment, that is true when the testimony is based upon objective facts; testimony as to his own subjective beliefs is not. *Cf. Willis*, 808 F.3d at 646 (holding that subjective belief that age discrimination occurred cannot support an inference of age discrimination). Lacking a factual basis to support his allegation of a pattern of antagonism with respect to his invocation of his FMLA rights, Plaintiff cannot demonstrate that Defendant's considering that invocation a negative factor caused his layoff.

*Finally*, as to other evidence raising an inference of retaliation, Plaintiff points to Mrs. Ambrogi's testimony that she determined which non-union employees to lay off based on calculations regarding their salary and benefits and business needs, aiming to maintain the fewest number possible "to cover each department." (Exh. D, ECF No. 32-1 at 56:21–57:20; Pla.'s Br., ECF No. 37-6 at 18). Plaintiff argues that a jury could reasonably infer from this admission that "[his] wife's disability and [his] FMLA leave in connection thereto was a motivating factor in the decision to furlough and subsequently terminate Plaintiff." (ECF No. 37-6 at 18). Frankly, even

19

mindful of the summary judgment standard, the Court does not understand how this inference follows. FMLA leave is a statutory right, not salary or a benefit; moreover, it is typically unpaid. 29 U.S.C. §§ 2612(a), (c). The evidence suggests that Defendant's decision to lay off Plaintiff (and others) was forward-looking and based on dollars and cents, and there are no facts to support Plaintiff's allegation that it was based on retaliation for Plaintiff's past invocation of his FMLA rights.

In sum, Plaintiff is unable to marshal evidence from which a jury could find that Defendant considered his invocation of his FMLA rights as a negative factor in its decision to lay him off. Accordingly, his claim cannot survive summary judgment review as premised on a mixed motive theory. And by virtue of his inability to make the necessary showing under the "more lenient" standard, *Beird*, 487 F. Supp. 3d at 279 n.3, it obviously cannot survive review under the *McDonnell Douglas* framework either. Because Plaintiff cannot demonstrate causation under either theory, Defendant is entitled to summary judgment as to Count IV of Plaintiff's Complaint.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment, (ECF No. 34), is **GRANTED**. An appropriate Order accompanies this Opinion.

*[Signature: Christine P. O'Hearn]*

**CHRISTINE P. O'HEARN**
**United States District Judge**